IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ERICKA SHEREE OLIVER,<br><br>*Defendant*. | Criminal No. 1:21-CR-39<br><br>Sentencing Date: November 3, 2022<br><br>The Honorable Michael S. Nachmanoff |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

    The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Bibeane Metsch, Assistant United States Attorney, and Rachel M. Roberts, Special Assistant United States Attorney, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual ("U.S.S.G." or the "Guidelines"), hereby files this position of the United States with respect to the sentencing of the defendant, Ericka Sheree Oliver. The defendant comes before the Court for sentencing after pleading guilty to count one of the indictment in the above-captioned case charging her with conspiracy to distribute 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-( 2-phenylethyl )-4-piperidinyl] propanamide, commonly referred to as fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a) and 846.

    The United States has no objection to the Presentence Investigation Report ("PSR"), Dkt. No. 275, which correctly calculates the Guidelines range to be 188 to 235 months of incarceration (Total Offense Level 35, Criminal History Category II). For the reasons set forth herein, the United States submits that a sentence of 151 months, which is below the Guidelines range, is

sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

**I.   FACTUAL BACKGROUND**

On June 1, 2020, in an initial effort to recover records related to a stolen vehicle, law enforcement executed a search warrant at a co-conspirator's residence in Arlington, Virginia where they located fentanyl, pill manufacturing materials, narcotics proceeds, a firearm, and ammunition. That day, Ms. Oliver assisted the resident of the apartment by retrieving a large quantity of their bulk currency and taking it with her for safekeeping. In a blender in the kitchen, approximately 1,082 grams of a mixture and substance containing fentanyl was found. Pressed pills bearing the markings of Oxycodone were also found along with a hydraulic jack, two dust collectors containing a large amount of residue, an inductor motor, pill presses with several insets with markings consistent with those found on controlled prescription painkillers, and various cutting agents. Law enforcement also located within the co-conspirator's vehicles two brick-like packages which were a mixture and substance containing fentanyl weighing approximately 665.7 grams and 1,007.0 grams respectively. Finally, another vehicle associated with the co-conspirator contained 5,307 pills found to be a mixture and substance containing fentanyl weighing approximately 4,437.0 grams.

The co-conspirator who rented the residence was arrested the same day, and law enforcement initiated an investigation to identify additional conspirators, including Ms. Oliver, Kyle Bouldin, Brandon Williams and Taurean Venable. Ms. Oliver rented an apartment in the same building as the co-conspirator whose apartment was searched in June of 2020 for $2,704 per month. That apartment was at points occupied by Mr. Venable. Upon a search of Mr.

Venable's residence in February of 2021, law enforcement located $23,139 in U.S. currency and various pieces of expensive jewelry, all of which was tied to his involvement in selling narcotics.

Evidence obtained from witnesses, cell phone downloads, and search warrants demonstrates that the defendant worked with co-conspirators to obtain and distribute fentanyl from 2018 through her arrest in February of 2021. The group obtained kilogram quantities of fentanyl from various sources, and communicated extensively about pressing the fentanyl, along with other substances, into pills for distribution and took painstaking care to make their product resemble various prescription medications such as Oxycodone in terms of size, color, and stamp. The defendant participated in pressing the elicit pills, and also participated in the sale of said pills. The defendant also exchanged messages with co-conspirators showing videos of the pill press at work and advertisements for narcotics from the dark web.

In February 2021, law enforcement conducted searches of other properties associated with Ms. Oliver in addition to her apartment occupied by Mr. Venable discussed above. In a hotel room used by Ms. Oliver, law enforcement seized $58,960 in U.S. currency and a men's 10K yellow and white diamond Cuban necklace. During a search of Ms. Oliver's residence which she rented for $4,500 per month, law enforcement found 504 pressed pills containing fentanyl, cutting agents, a money counter, a scale, $6,500 in U.S. currency, and various luxury items and accompanying receipts such as an appraisal for a $60,000 watch and a bill from Hermes for $2,936.20.

As part of the conspiracy, the defendant is being held accountable for the distribution of between 4 and 12 kilograms of a mixture and substance containing fentanyl.

**II.     ARGUMENT**

    A.     <u>Overview of Applicable Law</u>

Although the Supreme Court rendered the Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court still must "consult those Guidelines and take them into account when sentencing." *Ibid.* at 264. "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

When imposing a sentence that is "sufficient, but not greater than necessary," § 3553 states that the Court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. The Court must also consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). In addition, the sentence should protect the public from further crimes of the defendant and provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2)(C) & (D). Finally, the sentence should address "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

    B.     <u>Guidelines Calculation</u>

In accordance with § 6A1.2 of the Guidelines and Policy Statements and this Court's policy regarding Guidelines sentencing, the United States has reviewed the Probation Office's PSR

prepared in this matter. The Probation Office calculated the defendant's Guidelines range to be 188 months to 235 months' imprisonment, based on a total offense level of 35 and a Criminal History Category of II. PSR ¶¶ 95-96.

### i. Application of 18 U.S.C. § 3553 Factors to the Defendant's Case

The factors set forth in 18 U.S.C. § 3553 warrant the imposition of a sentence of 151 months of incarceration. This sentence is adequate but not greater than necessary to promote respect for the law and to deter future criminal conduct by the defendant and others. The defendant was involved in a significant manufacturing and distribution operation that pushed thousands of counterfeit prescription opioids laced with fentanyl into the local community. Four co-conspirators have already been sentenced for their respective roles in the conspiracy, including Cornelius Frazier who was sentenced to 151 months, Brandon Williams, who was sentenced to 125 months, Taurean Venable, who was sentenced to 120 months, and Kyle Bouldin, who was sentenced to 72 months respectively.

It is difficult to quantify the impact that the amount of fentanyl (between 4 and 12 kilograms, with 7 kilograms seized in a single day) involved in this offense had on communities in this District and elsewhere. Fentanyl is a powerful synthetic opioid which is 50 to 100 times more potent than morphine.[1] Fentanyl imposes a significant harm on society. It is an addictive and dangerous drug that destroys the lives of users, and has far reaching consequences on the users' families, friends, and communities. The resultant cost on society is tremendous, including the cost of law enforcement, healthcare, loss of productivity, and mental health treatment. The

---

[1] National Institute on Drug Abuse, *Drug Topics—Fentanyl*, https://www.drugabuse.gov/drug-topics/fentanyl (last visited October 26, 2022).

5

defendant engaged in the conspiracy with little, if any, regard for the harms to society and the users, and did so for her own financial gain. Counterfeit prescription drugs like those involved in this case are laced with fentanyl and designed in such a way that purchasers have a difficult time discerning if they are obtaining legitimate prescription medication or counterfeit pills. Consuming counterfeit pills laced with fentanyl can lead to death. Synthetic opioids, including fentanyl, are now the most common drugs involved in drug overdose deaths in the United States.[2] A sentence of 151 months of imprisonment should specifically deter this defendant, and it will also serve as a warning sign to others who might seek to profit from the distribution of dangerous controlled substances like fentanyl.

The evidence shows that the defendant played a similar role in the conspiracy to Mr. Frazier and that she directed others including Mr. Venable and Mr. Williams to manufacture and sell pills on her behalf. While the government agrees that no aggravating role enhancement is warranted in Ms. Oliver's case, she did play a greater role in the conspiracy compared to all of the related defendants except for Mr. Frazier. The fact that Ms. Oliver had an apartment in the same building as Mr. Frazier and that she was entrusted by him to pick up a large quantity of U.S. currency from Mr. Frazier for safekeeping, as well as their extensive text messages, reveals how close the two were. In addition, Ms. Oliver's lavish lifestyle that included often having large quantities of cash,[3] driving several vehicles, owning luxury items including watches worth tens of thousands

---

[2] *Id.*

[3] In addition to the cash seized from the defendant at various locations on the day of her arrest in February of 2021, in January of 2021, during a driving while intoxicated stop, law enforcement found within her vehicle a Prada shopping bag containing three bundles of cash totaling $14,300 and Cartier sunglasses among other items. PSR ¶ 57.

of dollars, and maintaining at least two properties (for a total of $7,204 per month in rent).[4] All of this indicates she was enjoying the fruits of her drug trafficking and making more than her co-conspirators. Mr. Bouldin had access to and sometimes lived with Mr. Frazier in his apartment and Mr. Venable lived in an apartment in Ms. Oliver's name. This suggests both were lower down in the organization and had access to less cash.

At age 34, the defendant has a relatively minor criminal history including convictions for first degree theft, driving on a suspended license, failure to return bailment property, and driving while intoxicated. PSR ¶¶ 54-57. Therefore, even though the 151-month sentence requested is below the properly assessed Guidelines range, it still reflects significant punishment when compared to the suspended sentences previously imposed on this defendant. In addition, in light of the sentences imposed in the related cases, the government submits that a Guidelines range sentence for Ms. Oliver would be excessive under the circumstances. Accordingly, the government recommends a downward variance and sentence of 151 months of imprisonment.

(CONTINUED ON THE FOLLOWING PAGE)

---

[4] The defendant maintains that from 2016 through the present she was operating a business called Millionaire Minds which according to the federalpay.org website is in the beauty salon industry. PSR ¶ 88. The government maintains that the defendant's lavish lifestyle was funded by drug trafficking. The defendant reported a very low gross income in 2020. *See* PSR 90.

### III. CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court impose a sentence including a prison term of 151 months.

        Respectfully submitted,

        Jessica D. Aber
        United States Attorney

By:      /s/
        Bibeane Metsch
        Assistant United States Attorney
        Rachel M. Roberts
        Special Assistant United States Attorney (LT)

CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing to all counsel of record.

                                                       /s/
                                       Bibeane Metsch
                                       Assistant United States Attorney
                                       2100 Jamieson Avenue
                                       Alexandria, Virginia 22314
                                       Tel: (703) 299-3700
                                       Fax: (703) 299-3981
                                       bibeane.metsch@usdoj.gov