IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA :

    v. : Case No. 1:21-cr-39

ERICKA OLIVER :

    Defendant :

**DEFENSE SENTENCING MEMORANDUM**

ERICKA OLIVER, through counsel, provides this Memorandum to this Court to aid it in deciding the appropriate sentence in this case. Her Position on the Presentence Report will be filed separately. This is not a case which requires extreme harshness in order to achieve the goals of sentencing. Ms. Oliver has no prior felony drug convictions. She was a heavy user of heroin for a period of years, from 2018 until her arrest in February 2021. She had been in an environment where drugs were commonplace so she knew many who were involved in both use and distribution. After her arrest in this case, she stopped using heroin, and did so on her own, without professional help. That is, of itself, an unusual accomplishment, and it is an example of her distancing herself from the environment which resulted in her being before this Court for sentencing.

Ericka's heroin use and connection to that world led her to know about Fentanyl. Friends at that time introduced her to the Dark Web. She dealt with her friends who she knew were involved in using and distributing drugs, and evolved into dealing herself. During that time, 2018 until her arrest in February 2021, she had her own heroin habit. She and her friends worked with one another, but she did not direct or order anybody to do anything. What her friends got from her was up to them. She neither organized or led anyone. She was not like Mr. Frazier who had Mr. Bouldin working for him. She also was not like Mr. Frazier who was involved in drug distribution in Chicago, Illinois, where he had family; in Pennsylvania where he worked with other associates of his, and in Georgia, where he had a major drug contact. He was dealing heroin from his Georgia connection when he and Ericka first met. He dated her cousin. His Georgia connection told him he could make more money with pills, so the connection began to supply him with pills. He would send Bouldin to Georgia to pick up the pills and bring them back. Ericka Oliver had no relationship with anyone like that. She did not order anybody to go anywhere or do anything. Her friends bought from her when they wanted, at amounts they chose. They were independent people.

When Frazier began to make pills on his own, he began supplying his connection in Georgia with pills, as well as distributing pills and cocaine in

Northern Virginia. Ericka Oliver had no operation like that, and certainly not with Venable or Williams. She also was not dealing around the country like Frazier. Ericka was not on his level. She was not involved, like he, in cocaine distribution. She worked regular jobs such as hauling construction debris for a friend who was a small remodeling contractor, and buying and selling cars with another friend who was a car dealer. She had a good eye for buying cars at an auction, where the car could be cleaned up, tuned up, and sold for a tidy profit. Her lifestyle was also shared with her significant other. She shared in the expenses such as rent and other things with Ericka, for example, it was she, not Ericka who purchased an expensive watch.

Ericka knows what she did was wrong, has admitted to it, and knows she will pay the significant penalty of a prison sentence. She has not been in such a situation before, and what she now faces is a daunting prospect.

Ericka's history of her own drug abuse and addiction is from 2018 until her arrest in February 2021 is not offered as nor intended to be a defense, but it does place things in context. She was in a world, during the period of this case, where she had her own heroin problem. The Bureau of Prison's highly successful 500-hour drug program is something that she knows she needs to give her the tools to stay away from that most addictive habit in the future after her release. She has the understanding that it is she who must want to change if anything positive is to happen. She does want to leave that life

behind. Her clean drug tests over the last 20 months are a good and positive sign.

Ericka is concerned about the impact of what she did and her guilt on those close to her. They are a small group but they are stable and supportive as the attached letters demonstrate. In her life she has been a positive person who contributed her time, energy, and efforts to helping others. The people who wrote on her behalf show that. She is a person who cares for, cares about, and helps others. None condone what she did, but they know her as the generous, caring, and giving person she is. With that support network, despite her crime, she has a better chance than some others to lead a positive life after she serves her sentence.

### I.     BACKGROUND

Ericka is to be sentenced on her guilty plea. She has admitted to the facts of what she did, accepts that it is she who bears responsibility for her actions, and knows she will receive a prison sentence as a result. She appreciates the small circle of those really close to her who have not abandoned her, and she feels that their future, continued support will be most helpful as she moves ahead in her life after she serves her time. The close network of positive people willing and able to help her is an important factor for her ability to go forward and not return to a courtroom like this ever again.

The letters written on her behalf are provided with this Memorandum. It is hoped that this Court will give their support some consideration when making its decision.

## II.   GUIDELINES

The law recognizes that there are individuals as to whom a sentence of extensive incarceration is not appropriate.  Not every case requires the harshness of long confinement.  Being locked up is a very difficult reality for anyone.  Ericka is eligible for Safety Valve consideration and, as with her co-defendants, a sentence below the Guidelines is appropriate.  She is the only Safety Valve eligible defendant in this case, other than, perhaps, Mr. Bouldin.  He will receive a Rule 35 sentence reduction of his 72 month sentence in the near future.  The Sentencing Commission, with all of its drawbacks, particularly in drug cases, where the Guidelines are not empirically based like they are for other offenses, recognized that there are situations where trial courts should and need to be able to give non-Guideline sentences.  For that reason, the district courts are vested with the authority to sentence below the Guideline range by the exercise of the discretion granted by 18 U.S.C. §3553(a).  Such a sentence is appropriate in this case.

This case does not require the very extreme harshness of the Guideline recommended sentence for a sentence which achieves the goals set forth in 18 U.S.C. §3553(a).  Mr. Venable had a Guideline range of 360 months to life

based, at least in part, on his prior criminal history.  He was sentenced to 120 months.  Mr. Williams had a Guideline range of 324 to 240 months, and was sentenced to 125 months.  Mr. Frazier will be given a Rule 35 reduction soon, but before that occurs, his Guidelines, including his machine gun, with its drum magazine and NATO military ammunition, resulted in a Guideline of 262-327 months.  He was sentenced to 151 months.  Mr. Venable received a 2/3 reduction; Mr. Williams' reduction was not quite 2/3; and Mr. Frazier, prior to his Rule 35, was reduced by 1/2.  Ericka has no prior drug cases, no firearms, and was in a straightforward buyer-seller relationship with people who were her friends and were part of the drug culture in which she lived.  She also, during that time, from 2018 until her arrest in 2021, had her own serious heroin problem.  She, like her co-defendants, should be sentenced well below the recommended Guideline range.

      The history of the Guidelines helps demonstrate why a Guideline sentence or a sentence close to it is not appropriate.  The Guidelines, for drugs, when originally formulated, were not, like other Guidelines, based on empirical data, research studies, or the specialized expertise of the Commission.  Drug Guidelines are not based on the analysis of sentence for like offenses as are the other Guidelines.  When the Commissioners could not agree on a single sentencing philosophy, they ultimately decided that the controlling force behind drug sentences was to be drug type and quantity.

Recidivism was neither analyzed nor included as a factor when the drug Guidelines were written. *See United States v. Diaz,* 11-cr-821-2 (J.G.) E.D.N.Y. (2013) which contains a thoughtful and accurate account of the difference for drug Guidelines compared to those for other offenses. Compare, for example, the Virginia Sentencing Guidelines which, in contrast, are actually based on empirical studies of sentences imposed across the state and the defendants' characteristics relating to the likelihood of recidivism.

In actuality, the foundation for this non-empirical calculation in the Federal Sentencing Guidelines for drugs was the sudden and tragic death of University of Maryland basketball star Len Bias, caused by a drug overdose. *Id.* at 10,13,14. It was that which led to use of drug type and quantity as the basis for calculating a sentence, rather than the more effective and practical approach based on an historical and empirical sentencing analysis which was used to develop the other Guidelines. The result of the unusual approach to drug cases has been a massive, exponential increase in our prison population with little societal change in drug use. Originally, for example, the ten (10) year mandatory minimum was intended for drug kingpins who control large organizations. Once the Len Bias story hit the news, the ten (10) year mandatory minimum was no longer reserved for kingpins, but was switched to be used for single actors, such as Ericka, based on quantity and type of drug. The sad story of Mr. Bias and the media attention it garnered resulted

in a major draconian shift from the research-based analysis used for the other Guidelines.

This case's Guideline is driven by drug type and quantity rather than the factors which relate to preventing recidivism. Ericka's background, such as her living in a drug involved environment and having her own heroin problem, plus her self-extraction from that pernicious habit, ought to be a sentencing factor. She decided, on her own, to change her life, and stopped. She got out of that environment and has stayed away. She has been compliant with her pretrial release for more than a year and a half – 20 months. That shows a will and an ability to change her life.

Sentencing factors consistent with 18 U.S.C. §3553(a) are an appropriate basis for analysis in this case. They are more accurate than the grid. Before the Guidelines and sentencing driven by controls designed to eliminate judicial discretion and end sentencing based on the individual, the approach to sentencing had been based on who was before the Court and what could be done to punish on the one hand, but also to help the individual and thereby prevent recidivism on the other. There was no cookie-cutter math grid ignoring the individual. A sentence for Ericka Oliver, under the totality of the circumstances, need not be within the very harsh Guideline range to be valid, practical, and proper. A Guideline sentence in or even close to the existing range of 188 to 235 months, as the prosecution seeks, would be

well beyond what is necessary to provide a sentence no greater than necessary to achieve the goals of 18 U.S.C.§3552(a).

While the defense recognizes that Ericka will be sentenced to prison, the request is for a term below the Guidelines range. She is not like Frazier, and giving her the same Guideline reductions as the co-defendants would avoid an unwarranted disparity. This will be her first time in prison. The purpose of criminal law is to benefit society by providing protection through arrest, prosecution, and conviction as well as by rehabilitating and avoiding recidivism for those who are sentenced. There is a sensible reason Congress has clearly said that sentences should be the minimal necessary to achieve rehabilitation and punishment. That is because just plan "locks em up" for lots of years does not work. The fundamental consideration in 18 U.S.C. §3553(a) that should be applied here is to look at the person and what can be done so that, while she pays for what she did, she is not crushed. She does not need an extreme sentence to not come back into the system again. That approach would generate respect for the law and our system. It lets people know they can have a chance for a positive future.

There has been bipartisan support in recent years to change the draconian mandatory sentencing laws. Time has proved that the severe drug sentences which marked our legal system for so long do not really work. Our drug laws cause us to have the largest prison population and the longest,

most extreme, prison sentences of any developed country in the world but there has been no beneficial result. We have 25% of the world's prison population, but only 5% of the world's population. If long prison sentences for drugs like the prosecutions seeks worked, then our drug problem would not be what it is today. Shorter terms and longer post-release follow-up has proven to be more effective. Where draconian drug sentencing laws have been changed, the proven result has been less recidivism and lower crime rates. New York and Texas proved that when they reduced their sentences and, as a result, had lowered crime rates and rates of recidivism. This Court is asked for a sentence that would allow Ericka to move forward in her life and not be crushed by the system. The recommended Guideline sentence in this case is unnecessarily severe; it is much more than the minimum necessary under 3553(a).

### III.   SENTENCES - PRE BOOKER

Even prior to *United States v. Booker*, 542 U.S. 220 (2005) pursuant to 18 U.S.C. §3553, U.S.S.G. 5K2.0, *Koons v. United States*, 518 U.S. 81, 92 (1996), *United States v. Weinberger*, 91 F.3d 642 (4th Cir. 1996) and *United States v. Brock*, 108 F.3d 31 (4th Cir. 1997) the Guidelines proposed sentence would not be appropriate in this case.

Some years before *Booker*, the Supreme Court acknowledged the wisdom, even the necessity, of sentencing procedures that take into account

individual circumstances.  *See Koons v. United States*, *supra* at 92, which recognized that people should be considered as individuals. The defendant in that case would likely face an unusually difficult time because of who he was and that was taken into account.  Not every case requires the harshness of a non-discretionary grid imposed lengthy incarceration to achieve a proper sentence.

## IV.   PRINCIPLES APPLICABLE TO SENTENCING

Traditional arguments often urged to justify extreme periods of confinement are not appropriate in this particular case.  The reasons generally urged for such sentences are punishment, protection of society, individual deterrence, general deterrence, and rehabilitation, and are mirrored in 18 U.S.C. §3553(a).  In 18 U.S.C. §3553(a), Congress has said that courts should look for the minimal sentence, one that is not greater than necessary to achieve the goals of sentencing.

Punishment in terms of vengeance does not serve a utilitarian purpose and is, in fact, counterproductive to a free and democratic society.  We are a society whose legal system is not supposed to be ruled by the emotion of revenge and we should continue to resist those who would push us in that direction.  Punishment can come in many forms and need not always be a long sentence of incarceration.  *See, e.g., United States v. Nesbeth*, 15-cr-18 (FB), (E.D.N.Y. (2016)) which addresses the long-term adverse consequences

of a felony conviction even when sentenced to probation.  That is not to say that Ericka Oliver will not be incarcerated but the post incarceration brand of being a drug felon, with all of the adverse consequences it will impose on her for the rest of her life, is also a serious punishment.  She will be hobbled when it comes to housing, her ability to obtain business licenses, and many other related matters as recounted in *Nesbeth, supra*.  A lesser sentence of incarceration is appropriate for this individual who is facing her first prison sentence.

  The protection of society consideration is inapplicable in this case.  Ericka's activities included her own drug abuse.  Her insular gay community and the reaction for many years in the social environment in her culture to the gay community resulted, for far too many, in drug use.  That is not an excuse and is only offered for the context.  The external hostility to her community experienced in her culture over the past years has contributed to its insularity.  That is changing now, but it still faces push back and does not erase the consequences of past years.  Society has no basis to fear her and there is no likelihood she will ever be in a situation like this again.  Her network and her own will are going to contribute to that.  She knows she is going to prison.  She recognizes its seriousness, and has no interest in doing anything that would lead to this again.

The concept of individual deterrence holds that an individual punished for a crime will not likely repeat it.  Ericka does not need to be deterred from crime in the future by the Guideline or prosecution recommended sentence in this case.  She has a strong supportive network which not everyone has available.  That is an important factor which will help keep her from coming before the courts again.

The theory of general deterrence holds that severe punishment of one individual will deter others.  This theory has been loudly espoused but there is no proof that it actually works.  It has no empirical, factual support.  In fact, in the England of several centuries past, pickpockets were hung in public squares, yet at these public executions other pickpockets worked the attending crowds *en masse*.  Historically, the only general deterrence ever actually shown to have genuine proven reliability is the guarantee of being caught.  The guarantee of being caught is something that really does stop crime.  It is the only clearly proved preventative.  It is, after all, what people know.  An easily recognized example is that people do not speed when they know there is a speed trap, or drink and drive when holiday roadside checks are in place.  It is the sureness of being caught, rather than the severity of the punishment, that is the only effective deterrent to have been proved.  It is the only deterrent with known, provable success.

In recent years, the states of Texas, New York, and Kentucky have reduced their legal system's former reliance on severe incarceration as the key to addressing crime, particularly drug crime. By using alternative sentences and lesser terms of incarceration when there is no drug felony record, no violence, and little likelihood of a repeat offense, they have lowered their crime rate and their repeat offender rate. Other states such as South Carolina have followed suit. The results are positive. Incarceration, on our massive scale has not solved our problems, particularly with drugs. As Judge Diaz so capably recognized in *United States v. Diaz, supra*, our drug sentencing history for over twenty (20) plus years has been driven by political factors, not by the needs of society nor by what justice requires in a rational system of laws.

Finally, we come to rehabilitation. This is the opposite of punishment for it shows a concern for the individual defendant and for society. Rehabilitation represents efforts to help the defendant and to also help society so that a defendant does not return to the conduct which led her afoul of the law. Ericka knows she will be sent to prison but does not need to be released from her first felony conviction after a 10-years plus sentence in order to stay away from this sort of conduct in the future. Her support network, acceptance of responsibility and initiative to change her life are

strong signs that she can be successfully rehabilitated without the need of extremely long confinement.

This Court is respectfully asked to impose a sentence in this case that will not be extreme and crushing. To avoid unwarranted disparities, a modification of the recommended Guidelines sentence along the percentages applied to her co-defendants would be consistent with 18 U.S.C. §3553(a)(6).

ERICKA OLIVER
By Counsel

_____/S/_____
MARVIN D. MILLER
VSB No. 1101
1203 Duke Street
Alexandria, VA 22314
Phone: (703) 548-5000
Fax: (703) 739-0179
ofc@mdmillerlaw.com


_____/S/_____
Bret D. Lee
VSB No. 82337
10521 Judicial Drive Suite 100
Fairfax, Virginia 22030
Phone: (703) 936-0580
bret@bretlee.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 28 October 2022, a true copy of the foregoing was filed with ECF system prompting copies to be sent to all counsel of record.

                                              _____/S/_____
                                              MARVIN D. MILLER